## Penn Refractories Co. v. Lititz Mutual Ins. Co.

*Carroll Caruthers* and *Frank A. Rugh*, for plaintiff.
*Smith, Best & Horn*, for defendant.

McWHERTER, J., July 23, 1945.—This matter is before the court on plaintiff's motion for a new trial. The action was one in assumpsit, in which plaintiff sought to recover for alleged damage to its buildings and equipment located in the Borough of Bolivar, Westmoreland County, Pa., under the provisions of a policy of insurance, upon which was endorsed what was termed "extended coverage", insuring plaintiff against loss by tornado, windstorm, etc., which loss plaintiff claims to have been occasioned on May 23, 1943.

In the third paragraph of plaintiff's statement of claim, referring to the extended coverage provision, in the fourth paragraph, describing the loss, and in the seventh paragraph, fixing the time, the loss is stated to be "by tornado or windstorm".

To this statement of claim, defendant filed an affidavit of defense, denying that there was at the time alleged such tornado or windstorm as brought the loss within the provisions of the policy.

Upon these pleadings, the matter was tried and submitted by the court to a jury for its determination, which found a verdict in favor of defendant. Thereafter, plaintiff moved the court to grant a new trial, assigning, in addition to the usual pro forma reasons, that the trial judge erred in instructing the jury that "a windstorm must be a storm of unusual violence".

In explaining to the jury the rules of law applicable to the facts as proven by plaintiff and defendant, the court used the definitions and doctrine as expounded in these cases:

In Stover v. The Insurance Co., 3 Phila. 38, President Judge Smyser defined "storm" as follows (p. 39):

"Interpreting the word, then, as connected with the weather, I think all the lexicographers will be found to

connect it, indissolubly, with the idea of violent force, vehement action, turbulent commotion and disturbance."

Again (p. 42) :

". . . for although in popular parlance, we speak of a 'storm of wind', 'a storm of snow', 'a storm of rain', yet I apprehend that in all these forms of expression, they stand associated, in the popular mind, with the idea of unusual force, vehemence, violence, or disturbed action, beyond an ordinary rain, or snow, or wind."

In Jordan v. Iowa Mutual Tornado Ins. Co., 130 N. W. 177, in which the policy sued upon indemnified against loss or damage by "tornadoes, cyclones, or windstorms", it was held (p. 178) :

"The word 'windstorm' is a simple one and is defined by Webster to be: 'A storm characterized by high wind with little or no precipitation.' As used in the policies in suit it should be construed as something more than an ordinary gust of wind, no matter how prolonged, and it takes its meaning measurably at least from the other words with which it is associated, to wit, tornado and cyclone. However, it need not have either the cyclonic or the twirling or whirling features which usually accompany tornadoes or cyclones, but it must be more than an ordinary current of air no matter how long continued. In other words it must assume the aspect of a storm, i. e., an outburst of tumultuous force."

In George A. Hoagland & Co. v. Insurance Company of North America, 131 Neb. 105, 267 N. W. 239, a similar question was involved, and it was said by Mr. Justice Good (p. 109) :

"What constitutes a windstorm, as that term is used in the policy of insurance has been considered by the courts of other states. Just what violence the wind must attain to be termed a windstorm has not, so far as we are aware, been judicially determined. The

courts that have dealt with the question say that, where the word 'windstorm' is used in connection with 'tor-. nado' and 'cyclone', these other terms are of significance, and that, while a windstorm need not attain the proportions and violence of a tornado or cyclone, it must be a wind of unusual violence."

In 14 R. C. L. 1272, §447, it is said:

"In the case of a policy against damage by tornado, hurricane, or windstorm, the words 'tornado' and 'hurricane' are synonymous and mean a violent storm distinguished by the vehemence of the wind and its sudden changes. The word 'windstorm' partially takes its meaning from 'tornado' and 'hurricane', and indicates wind of unusual violence."

To the same effect is 5 Couch on Insurance 4505, §1234. In some of the cases cited it has been said that to constitute a windstorm the wind must assume the aspects of a storm; that is, an outburst of tumultuous force. Webster defines a windstorm as a storm characterized by high wind, with little or no precipitation.

It must be conceded that none of these definitions affords an exact yardstick by which to determine when a wind becomes a windstorm. It is apparent that only a very general definition of the term can be given. It must be a wind of unusual violence of tumultuous force, and whether it attains that proportion is a question of fact. With these authorities in mind, the trial judge properly instructed the jury concerning the law applicable to the provisions of the policy, upon which plaintiff brought its action. Plaintiff relied chiefly on one witness, who was a workman at an adjoining plant, who testified as to the nature, force, and extent of the alleged windstorm. Other witnesses who lived in Bolivar submitted testimony that would indicate that there was no perceptible wind of unusual violence. Defendant submitted weather bureau reports from the nearest observation station about five miles away as to the

velocity of wind at that point and this witness testified as to whether the wind at the point of the accident would or would not be greater or less than at the observation point from a meteorological standpoint. The witness said it would be less. The defense also called an expert who testified as to the probability that the damage to the building resulted from structural defects rather than from wind. This raised a question of fact for the jury to decide, whether the wind was of sufficient violence on the date in question to come within the meaning of the insurance policy, and, in the second place, whether the damage to the building was caused by any windstorm. The jury resolved the facts presented in favor of defendant under the charge of the court. It would appear that plaintiff's request for a new trial should be refused.

### Decree

Now, July 23, 1945, after argument and after due and careful consideration, both judges hearing this case concurring, it is ordered, adjudged, and decreed that plaintiff's motion for new trial be and the same is hereby refused. An exception is noted and a bill is sealed for plaintiff.

Laird, J., concurs in this opinion.